IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE LARDNER,

    Plaintiff,

            v.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

Civil Action Number
03-0874 (HHK)

## THIRD SUPPLEMENTAL DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C., and now relocated to Winchester, Virginia. I

have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to

July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that

capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures,

appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters. I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 278

employees who staff a total of ten (10) units and two field operational service center units whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act of 1974; Executive

Order 12958, as amended[1]; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the three FOIA requests of plaintiff, George Lardner, which sought access to FBI records concerning Aniello Dellacroce; records dated prior to 1960 concerning Sam Giancana; and all records regarding the FBI's Top Hoodlum Program, both prior to1960, and from 1960 to the present day. I am also familiar with the documents concerning this litigation which have been filed with this Court.

(4)     This declaration supplements information previously provided in the declarations of David M. Hardy, dated June 18, 2010 and August 27, 2010, submitted with the FBI's motion for summary judgment, and responds to plaintiff's cross-motion and opposition filed on December 14, 2010.

---

[1] The material in this case was classified prior to December 29, 2009 and therefore is governed by Executive Order 12958, as amended. On December 29, 2009, President Barack Obama issued a new Executive Order regarding classified national security information, intended to supersede E.O. 12958, as amended: Executive Order 13526, whose provisions took full effect on June 27, 2010. Nevertheless, the information is classified under Executive Order 13526 as well.

## SEARCH FOR RECORDS REGARDING SAM GIANCANA

(5)     On September 14, 1993, plaintiff submitted a FOIA request to FBIHQ for records

dated prior to 1960 on Sam Giancana. Plaintiff did not submit separate requests to any of the

FBI's field offices for records on Sam Giancana as required by the FBI's regulation at that time.

Plaintiff's request did not specifically request cross-references on Sam Giancana. Therefore, the

FBI searched the indices to the Central Records System ("CRS") at FBIHQ for main records on

Sam Giancana.

(6)     According to information contained in the FBI's FOIA processing system, 38

pages of information were reviewed and released (in full or part) in 1998 following the FBI's

Headquarters search for records regarding Sam Giancana.[2]

(7)     On or about August 17, 1998, the Office of Information and Privacy ("OIP")

advised plaintiff that they affirmed the FBI's determination and processing of records relating to

Sam Giancana, noting that certain information was properly withheld pursuant to FOIA

Exemptions (b)(2), (b)(7)(C), and (b)(7)(D). Additionally, OIP advised plaintiff that one file

containing information on Sam Giancana was made available to the public by the National

Archives ("NARA") through the President John F. Kennedy Assassination Records Collection

Act of 1992 ("JFK Act").[3] OIP provided plaintiff with the address of NARA so that he could

obtain the records directly from NARA.

_____

[2] Additional information or records regarding the search were not available given the number of years that have passed since the search was conducted.

[3] 44 U.S.C. Section 2107, Public Law 102-526, passed on October 26, 1992.

(8)    Although plaintiff contends in his cross-motion and opposition (page 6) that the FBI's search was not complete because NARA has advised that they have 21 file boxes of material on Sam Giancana, this does not necessarily establish an insufficient or unreasonable search by the FBI. Plaintiff provides no additional information as to where these records originated, if from certain FBI Field offices, and/or the dates of the records. Since the FBI's search encompassed only FBIHQ because that is where plaintiff directed his request and it encompassed the time from prior to 1960, it may be that the additional records fall outside FBIHQ and the time frame. Plaintiff also describes Giancana as a"Chicago" mobster. Again, the FBI was not obligated to search field offices since his request was not sent to any field office such as Chicago, thus such records would not have necessarily turned up in a FBIHQ's search.

SEARCH FOR RECORDS REGARDING ANIELLO DELLACROCE

(9)    On January 21, 2003, plaintiff submitted a FOIA request to FBIHQ for records on Aniello Dellacroce. It appears that plaintiff did not submit separate requests to any of the FBI's field offices for records on Aniello Dellacroce. Plaintiff's request sought main and cross-reference files on Aniello Dellacroce. Therefore, the FBI searched the indices to the Central Records System ("CRS") at FBIHQ for mains and cross-references on Aniello Dellacroce. The search resulted in the identification and processing of nine main files and approximately 144 cross-reference files. See Second Supp. Hardy Declaration ¶¶53-63. Plaintiff's request also sought ELSUR material on Aniello Dellacroce. The FBI performed an ELSUR search on February 13, 2003. The FBI's ELSUR search was negative for FBIHQ electronic surveillance and/or overhears relating to Aniello Dellacroce.

(10)    Plaintiff also contends that the FBI must search separate confidential indices. Any confidential files would be located through a search of the FBI's automated CRS. See Second Supp. Hardy Declaration, footnote 10. Thus, there is no separate search of confidential files, as these would be listed or noted through the automated CRS search. [4]

(11)    Plaintiff states in his opposition (page 9) that he requested photographs and photographic albums responsive to Aniello Dellacroce. Plaintiff's request was not specific to photos -- he asked for "copies" of all records relating to Aniello Dellacroce, and the FBI complied with his request by providing photocopies of photographs available in the records.

## SEARCH IN REGARD TO ELSUR MATERIAL

(12)    The FBI conducted an automated ELSUR search for records dated after 1960, as well as a manual search of seven boxes of 3x5 ELSUR index cards for records dated prior to 1960, on over 500 search terms/subjects as requested in plaintiff's April 15, 2004 faxed list (see **Exhibit A**).[5] The FBI's ELSUR searches were burdensome and requested searches of FBIHQ, as well as approximately 21 different field offices and legats. The FBI's manual ELSUR search provided negative results; however, the FBI's automated ELSUR search[6] provided responsive records which were processed and released to plaintiff. Accordingly, the FBI has released to plaintiff all reasonably segregable, nonexempt information responsive to his FOIA requests at issue in this litigation.

---

[4] Plaintiff suggests in his cross-motion and opposition (page 7) that the FBI redacted Aniello Dellacroce's name on Bates page: FBI-LARDNER-407, which is not correct.

[5] Plaintiff's list included the names of Sam Giancana and Aniello Dellacroce.

[6] The FBI's automated ELSUR search included any responsive overhears and mentions responsive the plaintiff's FOIA requests.

(13)    The FBI has provided plaintiff with all responsive June Mail, as well as
responsive ELSUR material. These materials have been located through a reasonable search of
the FBI's ELSUR indices as explained in the Second Supp. Hardy Decl. ¶¶ 47-52 and further
clarified in the above paragraph. The searches conducted by the FBI were reasonably calculated
to uncover all relevant documents as required by the FOIA. Plaintiff suggests that the FBI should
be required to go beyond its normal search methods and conduct a search within the documents
that have already been released to plaintiff or to search individual offices. Since the searches
conducted by the FBI of the ELSUR indices were the most likely method to uncover any
documents responsive to plaintiff's requests, further burdensome searches are not necessary nor
required under the FOIA.[7]

### SEARCH FOR "UNABLE TO LOCATE" - MISSING FILES

(14)    Plaintiff avers that the FBI failed to locate missing sections of the Top
Hoodlum files. As described previously, some sections of the Top Hoodlum files were placed on
"special locate" and continue to be missing. See Supplemental Declaration of David M. Hardy
dated November 21, 2008, ¶69, footnote 27. The special locate system was a process where
clerks assigned to work at the FBI's off-site storage facility would specifically search for missing
files in all possible places within the facility where records might be located. The special locate
program is no longer employed as part of the FBI's searching procedures. The FBI currently
uses the following procedures to locate missing files. Once a search is conducted on a subject

---

[7] The FBI's search for responsive material in the ELSUR indices would have included
Authorization Letters since such letters were maintained in the ELSUR subfiles from the Field
Offices. Therefore, if such letters existed they would have been located through the normal
search process and provided to plaintiff.

and a potentially responsive file is identified, the employee goes into the FBI's File Automated Control System ("FACS") to order the file. The disposition of a file is determined in two ways:

(a)     The file is listed in FACS as "In File" and the FBI's Alexandria Records Center ("ARC") personnel who pull files for shipment cannot locate the file on the shelf or in any of the appropriate and expected areas; or

(b)     The file is listed as "Charged Out" to another employee. The employee is contacted and asked about the status of the file. At times, the employee is no longer with the FBI or has retired. The Unit Chief of the appropriate unit is contacted regarding the file and requested to conduct a search of their area. If the employee is still on staff, then they are asked to search their area for the file.

A file is determined to be "Unable to Locate" when all searches of appropriate areas have been exhausted. In plaintiff's case, the FBI has made every good-faith effort to locate all missing files and documents responsive to his requests. The FBI has processed and released all missing files and documents that it has located to date. The FBI has exhausted all means to locate the remaining missing files.

## ADDITIONAL REPROCESSING OF RECORDS IS UNNECESSARY

(15)     There is no basis for re-processing the more than 60,000 pages of records released to plaintiff. The FBI, in its discretion, re-processed records involving Exemptions (b)(1) and (b)(5) in the sample. Further, the release of third party names previously withheld under Exemptions (b)(6) and (b)(7)(C ) were based upon the passage of time, meaning in those instances, the parties were now deceased or the age of the document warranted the release of names.[8] As for other names that continue to be protected, the privacy interests remain strong.

---

[8] The FBI applied a 100-year rule to the names and identities of Top Hoodlums listed in the documents.

(16)     Although the JFK Act mandated the public release of documents through NARA, the decision as to how and when such information is released is determined by NARA. The processing of records by NARA under the JFK Act is totally separate from the processing conducted by the FBI pursuant to the FOIA and the Privacy Act of 1974. 5 U.S.C. §552a. The FBI is not consulted as to the redactions on documents pursuant to the JFK Act. While the FBI would be obligated to release identical information which has been properly disclosed to the public, plaintiff bears the burden of establishing that the exact same information, i.e., specific and identical to that information being withheld, has already been made publicly available through the JFK Act. Plaintiff has attached a few exhibits to his unsworn declaration in which he states that he obtained part of a document from NARA that was released by the FBI with deletions. Aside from these pages, plaintiff has not established that any additional exact documents or information released in full by NARA has been subsequently redacted by the FBI. Plaintiff has the burden to establish that each identical piece of information processed by the FBI that he contests has been formerly and properly made a permanent public record in order to overcome the exemptions claimed by the FBI to protect the privacy with regard to third party names and identifying information. Plaintiff has not met this burden. To the extent that plaintiff does establish that exact pages or documents responsive to his FOIA requests have been released by NARA through the JFK Act unredacted, the FBI will take steps to release those exact pages or documents from the sample of documents described in the Second Supp. Hardy Declaration ¶¶67-68 and Exhibit D.

Justification for withheld information

(17)     As set forth in my prior declaration dated August 27, 2010, the FBI explained its justifications for withholding information in this case under Exemptions (b)(1), (b)(2), (b)(3), (b)(6), (b)(7)(C ), (b)(7)(D), and (b)(7)(E). 5 U.S.C. §552(b)(1), (b)(2), (b)(3),(b)(6), (b)(7)(C),

-8-

(b)(7)(D) and (b)(7)(E). The following information supplements the previous justifications and specifically responds to plaintiff's contentions in his December 14, 2010 reply:

Exemption 2

(18)    The FBI properly applied Exemption (b)(2) to confidential source symbol numbers which are assigned by the FBI to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality. It is an internal administrative reporting tool to protect the sensitive identity of an informant in written documents generated by the FBI. See Second Supplemental Hardy Declaration,¶82.

(19)    I am familiar with the arguments made by plaintiff regarding the inadvertent release made in the request for records regarding Ernest Withers. In response to a FOIA request for records concerning Ernest Withers made by a reporter for the Memphis, Tennessee newspaper, *The Commercial Appeal*, the FBI released approximately 369 pages of records. As part of this release the FBI, consistent with its long-standing policy, redacted FBI source symbol numbers and the names associated with those numbers throughout the material -- with one isolated exception. On one page, the FBI inadvertently did not redact an FBI source symbol number and the name associated with that number. Despite this release -- which was entirely inadvertent, the FBI has not officially acknowledged whether Mr. Withers was ever an informant of the FBI.

(20)    Permanent source symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. The symbol number is used as an administrative reporting tool to protect the actual, sensitive identity of an informant in documents generated by the FBI. Source symbol numbers are vigorously protected by the FBI because release of source symbol numbers would not only violate the assurance of confidentiality promised to those sources but could also endanger the

-9-

lives of those sources and their families and associates. Even if a source is deceased, disclosure of the source's identity could create a chilling effect on the activities and cooperation of other FBI sources. The release of a source's identity may lead to acts of reprisal, harassment or unwarranted public attention to the source or his or her associates and family if the cooperation with the FBI were ever disclosed. It is only with the assurance of complete confidentiality that the FBI is able to enlist confidential sources to aid in its law enforcement mission.

(21)     As a result, the FBI does not release the identity of confidential sources or confidential source symbol numbers -- regardless of whether the sources are alive or dead -- without the explicit consent of those sources or official acknowledgment. Therefore, any release of an FBI source symbol number can only be inadvertent in nature. This is the case with respect to the released documents related to Ernest Withers. Plaintiff's argument that the FBI should release the same information in this case (i.e., source names and symbol numbers), as it released in the Withers documents, fails to take into account not only the FBI's long-standing policy of protecting such information, but also the fact that the one isolated, inadvertent release in the Withers documents should not be interpreted as a blanket waiver to release all other FBI source names and symbol number in this and other cases.[9]

Exemptions 6 and 7(C)

(22)     The FBI has set forth the privacy interests invovled in the withheld material. See Second Supp. Hardy Decl. ¶106. Any public interest in the release of the withheld material has been weighed against the privacy interests in determining whether the information could be disclosed. Id. The public interest is defined as that information which would shed light on the agency's performance of its mission to protect and defend the United States against terrorist and

---

[9] The names of Jack and Morris Childs were previously released because they were officially acknowledged.

foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal and international agencies and partners. Id. The FBI determined with each assertion of Exemption (b)(6) and (b)(7)(C ) that the release of third party names or identifying information would not shed light on how the FBI performs its statutory duties. Id. Thus, there is no public interest as defined by the FOIA. However, there remains a strong privacy interest in protecting the names.

(23)     Plaintiff's attachment to plaintiff's cross-motion and opposition, marked Exhibit 1 and Exhibit 2, are described as items that plaintiff states he obtained from NARA in which third party names were released. Although the release of the third party names show exactly which individuals were involved in a private conversation, it does not shed light on government operations. Plaintiff's attachment actually supports the FBI's assertion that the release of these names do not shed light on government operations, the core purpose of the FOIA.

    Law Enforcement Purpose

(24)     For Exemption (b)(7)(C), (b)(7)(D) and (b)(7)(E), the FBI has explained the law enforcement purpose involved in the creation of the records. The records were complied as part of the FBI's criminal investigation of AnielloDellacroce and other individuals designated for investigation pursuant to the Top Hoodlum Program. See Second Supp. Hardy Decl. ¶103, listing the federal statutes that applied to the FBI's criminal investigations.

## CONCLUSION

(25)    The FBI has released to plaintiff all reasonably segregable, nonexempt information responsive to plaintiff's FOIA requests subject to this litigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this __25th__ day of January, 2011.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE LARDNER,                    )
                                   )
    Plaintiff,                     )
                                   )
        v.                         )        Civil Action Number
                                   )        03-0874 (HHK)
FEDERAL BUREAU OF INVESTIGATION,   )
                                   )
    Defendant.                     )
                                   )
                                   )

# EXHIBIT A

| | |
|---|---|
| TO: | AUSA Lisa Goldfluss |
| FAX NO. | (202) 514-8780 |
| PHONE: | (202) 514-7198 |
| RE: | C.A. No. 03-0874; Pace of Disclosure |
| DATE: | April 15, 2004 |
| TIME; | ~~9:15 am~~ 11:35 PM |
| NO. OF PAGES: | ~~14~~ /5 |

======================================================================

| | |
|---|---|
| FROM: | James H. Lesar |
| ADDRESS: | 1003 K Street, N.W.<br>Suite 640<br>Washington, D.C. 20001 |
| PHONE: | (202) 393-1921 |
| FAX: | (301) 657-3699 |

Dear Lisa:

1.  Attached is Mr. Lardner's list of the Mafiosi he wants ELSUR searches conducted on. In accordance with FBI practice, these names should be searched under logical variants, including buildups and breakdowns and known aliases of the names. Also, "mentions" and "overhears" should be provided as well as those ELSUR surveillances these persons were the subjects of.

2.  The FBI was to have gotten back to you by April 5th regarding the pace of the release of documents responsive to Mr. Lardner's 1993 requests. I have heard nothing regarding this. I said I would hold off on a motion to require a faster pace of disclosure until you informed me what compromise the FBI was willing to make. I must now insist that we bring this to a head promptly. I had noted that in my experience the FBI had provided documents to a former client of mine at the rate of 5,000 pages per month. A recent filing by the FBI in another case has directed my attention to their assertion that in Konigsberg v. DOJ, Civil Action No. 02-2428, they 30 Legal Administrative Specialists to the case and processed "over 24,000 pages in three months." In that case, the request was only four years old,

as opposed to the more than a decade that have
transpired since Mr. Lardner submitted his request
for these records.   Given these facts, not to
mention Mr. Lardner's status as a Pulitzer-prize-
winning author seeking records on a very important
subject, I am inclined to believe our chances of
obtaining a substantial acceleration in the pace
of disclosure are quite good.   If you still want
to negotiate rather than litigate, please let me
hear from you by next Monday.

Sincerely yours

Jim Lesar

TOP HOODLUMS

List for search of Elsur Index in various cities, pre 1960:

1. New York:
   Albert Anastasia
   Anthony Anastasia
   Aniello Dellacroce
   Frank Costello
   Joseph Doto aka Joe Adonis
   Carlos Gambino
   Vito Genovese
   Joseph Bonanno
   Gaetano "Tommy Brown" Lucchese or Luchese aka Three Fingers Brown
   Joseph Profaci
   Salvatore Profaci
   Charles "Lucky" Luciano
   James "Jimmy Doyle" Plumeri
   Louis "Dutch Louis" Goldberg
   Mike Clementi
   Joseph P. Ryan
   Morris Schmertzler aka Max Courtney
   Frankie Carbo
   Abner "Longie" Zwillman
   Joe Stracci aka Joe Stretch
   Benjamin Levine
   Abe Chait
   Anthony Ricci
   Ravenite Social Club
   Pasquale Del Ducca
   Anthony Carfano
   Thomas Toddo Marino or Thomas A. Marino
   John Odo aka John Oddo aka Johnny Bathbeach
   Alex Di Brizzi
   Michael Mirandi
   Joseph Parisi
   Albert Ackalitis
   Thomas DioGuardia aka Tommy Dios
   George Scalise
   Ettore "Eddy" Coco
   Sol Cilento
   William Masselli
   Joseph Magliocco
   Joseph Gallo
   Joseph Colombo

Thomas Eboli
Paul Castellano
Anthony or Michael Cappola or Mike Coppola
John Bonaventre
Natale J. Evola
Carmine Lombardozzi
Michael Miranda
John Ormento
James Osticco (Pittston, Pa.)
Joseph Profaci
Vincent Rao
Joey Rao
Armand Rava
Joseph Riccobono
Joseph Rosato .
Angelo Sciandra (Pittston, Pa.)
Salvatore Tornabe
Vincent "Jimmy Blue Eyes" Alo
Alphonse Perisco
Dominc Alongi
Carmine Galante
Frank "Funzi" Tieri
Nicholas Marangello
James "Jimmy Nap" Napoli
Louis "Louie Dome" Pacella
Anthony "Fat Tony" Salerno
Thomas DiBello
Carmine Tramunti
Joseph Spencer Ullo
Joseph Valachi
Mickey Zaffarano
Ettore "Terry" Zappi
Gaspar DiGregorio
Johnny Morales
Gano de Magonza
Salvatore Bonnano
Albert Gallo
Joseph Gallo
Larry Gallo
Vincent Mangano
Anthony Strollo
Joseph Biondo
Edward Aronica
John "Johnny Dio" Dioguardi or Dioguardia
Lewis J. McWillie
Pedro Fox

Martin Fox
Irving Frank Sherman
Anthony Bonasera
Nicholas A. Ratenni
John M. Earle
Thomas Milo Sr.
Alexander DiBrizzi aka Alex Di Prizzi
Anthony Squillante

2. Chicago
Mooney's Armory Lounge ("Mo")
Murray Humphrey's apartment ( "Plumb")
Johnny D'Arco's First Ward hq ("Shade")
Dry-heat room at Postl's health club
Morrison Hotel barber shop
Anthony Accardo's attorney's law offices
Mike Fish's Restaurant
Jake Guzik
Murray Humphreys
Anthony Accardo
Charles "Cherry Nose" Gioe
Samuel "Golf Bag" Hunt
Louis Campagna
Edward D. Vogel aka Eddy Miller, George Walters, "Dutch" and "Big Head"
Dominic Blasi
Ross Prio
Caesar DiVarco
Vincent A. Solano  Sam Giancana
Paul Ricca aka DeLucia
Gussie Alex
Marshall Caifano
Johnny Roselli
Felix "Milwaukee Phil" Alderisio
Chuckie Nicoletti
Ross Prio
Lenny Patrick
Eddie Vogel
Jimmy Allegretti
Sidney Korshak
Jackie Cerone
Sam DeStefano
Anthony Spilotro
Frank Ferraro
Celano's Custom Tailors
"Little Al" (name of the eavesdropping operation)
Mike Brodkin

Les Kruse
Frankie LaPorte
John D'Arco
Allen Dorfman
Roy Williams
Joseph Lombardo
Joseph Aiuppa
John Factor
Joseph Glimco
Paul "Red" Dorfman
James R. Hoffa
Frank Zito (Springfield)
Charles "Chuckie" English
Joe Fischetti
Charley Fischetti
Rocco Fischetti
Angelo LaPietra

3. Detroit
Joe Zerilli
Morris "Moe" Dalitz
Anthony "Tony" Zerilli
William E. Bufalino
Angelo Meli
Joe "Scarface" Bommarito
Peter Corrado
James R. Hoffa
Anthony Giacalone
Vito Giacalone
Pete Licavoli
Michael Polizzi
William "Black Bill" Tocco
Leo "Lips" Moceri
Frank Milano
Al Polizzi

4. Philadelphia
Joe Ida
Angelo Bruno
Dominick Oliveto (Camden)
Aldo Magnelli (Harrisburg)
Jack Parisi aka John Palermo, Anthony Puylli and Gioccrino Parisi
Peter Casella
Felix John De Tulio aka "Skinny Razor"
Dominick Pollina aka Dominick Pollino, Anthony D. Pollin, "Mr. Migo"
Max "Willie" Weisberg

Ruissell Buffalino
Abraham Minker
Vincenzo Amato
Vincenzo Maccarone
James "Lefty" Gatti
Giuseppe Rugnetta
Michael Maggio
James Osticco
Angelo Sciandra
Dominick Alaimo

5. Boston:
Raymond L. S. Patriarca
Raymond J. Patriarca
Benjamin F. Tilley
Abe Sarkis
Anthony Santaniello
Phillip Buccola
Joseph Lombardi
Frank Iacone
Tony Santello, true name Anthony Sanfratello
Sam "Big Nose Sam" Cufari
Frank "Butsy" Morelli
Johnny Candelmo
Louis "Louis the Fox" Taglienetti
Frank Cucchiara
Joe Patriarca
Gennaro Angiulo
Larry Zannino
Peter Limone
Joe Lombardi
Donato Angiulo
Frankie Angiulo
Edward "Pun ch" McLaughlin

6. Buffalo:
Steve or Steven Maggadino or Magaddino
Russell Bufalino or Buffalino
Ray Calisi or Roy Carlisi
Domenick or Dominick D'Agostino of Niagara Falls
Joseph Falcone of Utica
Sam Lagattute
Antonio Maggadino or Magaddino
John Montana
Frank Valenti (Rochester)

Costenze or Costanza Valenti (Rochester)
Salvatore Pieri

7. Pittsburgh
   John La Rocca
   Michael J. Genovese
   Gabriel Mannarino
   Sam Mannarino
   Salvatore Marino
   William G. Lias aka William Liacakos, "Big Bill," and "The Greek."
   Dominick Anzalone
   Sebastian John Rocca
   Giuseppe Rosa
   Frank Amato

8. Cleveland :
   Morris Dalitz (and Las Vegas)
   Frank Brancato
   John "Curly" Montana
   Alex "Shondor" Burns
   Joe Fretti
   John Scalish
   Angelo Lombardo
   William Presser
   Jackie Presser
   John DeMarco
   N. Louis "Babe" Triscaro
   Daniel "Danny" Greene
   John Nardi
   Anthony Liberatore
   Aladena "Jimmy" Fratianno
   James "Blackie" Licavolid
   Anthony Milano
   Frank Milano
   Leo "Lips" Moceri
   Alfred "Big Al" Polizzi
   Louis "Lou Rhody" Rothkopf
   Irving "Slick" Shapiro (Toledo)
   Anthony "Tony Dope" Delsanter
   John "Peanuts" Tranolone
   Milton Rockman
   Jasper Joseph Aiello aka Jaspar Joseph Aiello
   Joseph Logatto

9. Los Angeles
   Jack Dragna

Thomas Dragna
Louie Dragna
Mickey Cohen
Aladena "Jimmy" Fratianno
Frank DeSimone
Joseph Sica
Simone Scozzari (of San Gabriel and Palermo, Sicily)
Dominic Brooklier
Sam Bruno
Joseph Adamo
Giolamo "Momo" Adamo
Sidney Korshak
James Iannone
Nick Licata
Carlo Licata
Giocchino "Jack" LoCicero
Thomas "Tommy" Palermo
Salvatore Pinelli
Anthony R. Pinelli sr.
Salvaltore Piscopo
Angelo Polizzi
Thomas Ricciardi
Michael "Mike Rizzi" Rizzitello
John Roselli
Samuiel "Sam" Sciortino
Frank Stellino
Charles Dippolito
Joseph Dippolito
Mimi Tripoli
Charley "Bats" Battaglia


10- Tampa
Santo Trafficante Sr.
Santo Trafficante Jr. aka Louis Santos of Havana, Cuba
Sam "Toto" Trafficante
Frank Ragano
Anthony Randazzo
Augustine Friscia
Salvatore Italiano
Augustine Primo Lazzara
Jimmy Longo
Nick Scaglione

11-New Orleans

Carlos Marcello
Dandy Phil Kastel
Frank Costello
Joseph Baroni
Jose Pecorao
Joseph Poretto
Pershing Gervais
Joe Marcello
David Ferrie
The Beverly Club

12. St. Louis
Morris Shenker
Anthony "Tony" Giordano

13. Newark
Joseph Doto aka JoeAdonis
Ruggiero Boiardo
Anthony "Tony Pro" Provenzano
Gerardo Catena or Cateno (South Orange)
Anthony Caponigro
Angelo "Gyp" DeCarlo
Nicholas Delmore
Marco Reginelli
Charles Tourine
Charlies Chieri (Palisades, N. J.
Vito Genovese (Atlantic Highlands, N. J.)
Joseph Ida (Highland Park, N. J.)
Louis A. LaRasso (Linden, N. J.)
Frank Majuri (Elizabeth)
Dominick Oliveto (Camden)
Anthony P. Riela (West Orange)
Sam DeCavalcante
Willie Moretti
Abner "Longie": Zwillman

14. Dallas
Frank Ianni
Joe Ianni
Joseph Civello aka Ciuello
Benny Binion
Hollis Wesley Queen
Leroy Eggleston
Cecil R. Green
Lawrence Genaro
Angelo and/or Joe Piranio

Carlos Marcello
Jack Ruby
Lewis J. McWillie
Olin Ray Tyler

15. Denver
    Eugene Smaldone
    Clyde G. Smaldone
    James Colletti of Pueblo
    Robert V. Dionisio
    Joseph E. Spinuzzi
    Joseph Salardino


16. Kansas City
    Nick Civella
    Carl J. Civella
    Alex Presta
    John Anthony Mangiaracina
    Thomas Simone
    Fifth Street Drugstore (see 62-9-247)
    Eugene Geuben McCroskey
    Anthony Joseph Cambiano
    Joseph Balestrere
    Peter DiGiovanni
    Joseph DiGiovanni
    Joseph DeLuca
    Anthony Gizzo
    Charles Carollo
    Gatetano Lococo aka Thomas or Tano Lococo
    Charles or Charley "Mad Dog" Gargotta (killed in 1950)
    Charles Binaggio (killed in 1950)
    Gus Gargotta
    Joseph Filardo
    Felix Ferina
    William Cammisano Sr.
    Joseph "JoJo" Cammisano
    William Cammisano Jr.
    Carl "Tuffy" DeLuna
    Anthony "Tiger" Cardarella
    Peter J. Simone
    Anthony "Tony Ripes" Civella (may have been too young pre 1960).
    Carl Spero
    David Bonadonna
    Charles Lombardo
    Felix Ferina

17. Las Vegas
    Phil Ponti
    John Roselli
    Frank "Lefty" Rosenthal
    Johnny Drew
    Bernard "Bernie" Rothkopf
    Morris Shenker
    Irving "Slick" Shapiro
    Benjamin "Bugsy" Siegel
    Joseph "Doc" Stacher
    Aladena "Jimmy" Fratianno
    Morris Dalitz
    Marshall Caifano
    Benny Binion
    Allen Glick
    William "Bones" Renner
    Louis "Russian Louie" Strauss (murdered April 1953 at Binion's behest).
    Oscar Goodman
    Joe Agosto
    Edward Levinson
    Mo Sedway
    Morris Rosen
    Gus Greenbaum
    Willie Bioff
     John "Jake the Barber" Factor
    Tony Accardo
     Sam Gianjcana
    Frank Sinatra
    Emilio Georgetti
    Merton Wertheimer


18. Miami
    Joe Doto aka Joe Adonis
    John Angersola
    William G Bischoff
    Isadore Blumenfeld
    Max Caldwell
    Michael Cappola
    Anthony Carfano
    Louis Cohen
    Frank Costello
    Angelo DeCarlo
    Nicholas Delmore
    Joseph J. DiCarlo

Salvatore Falcone
Joseph Fischetti
Joseph Massei
Samuiel "Game Boy" Miller
Benjamin Street
David Yaras
Anthony "Tony" Plate
John Roselli
Santo Trafficante
Sam Giancana
Meyer Lansky
Jake Lansky
Anthony "The Ant" Spilotro
John "Peanuts" Tranalone
Capra's Restaurant
Gaetano "Three Finger Brown" Lucchese
Pedro Fox
Martin Fox
Charles Tourine
Vincent Alo
Paul De Lucia

19. San Diego
Frank "Bomp" Bompensiero (capo in charge of San Diego until incarcerated
in 1955. Went to LA circa 1960).
Red Sagunda
Frank Borgia
Antonino "Tony" Mirabile also known as Antonino Miraebele

20. San Francisco
Alfred J. Sigle
Joseph J. "Joe" Parente
Arthur H. "Artie' Samish
Chin Bok Hing
Renaldo J. "Red" Ferrari
Joseph L. Alioto
Anthony J. Lima
Michael Abati
Joseph Lanza
Gaspare "Bill" Sciortino
Rudy Tham (Teamster)
Andy Anderson (Teamster)
Jack Goldberger (Teamster)
Emilio "Gam" Georgetti
Louis Figone
Charles Figone

Angelo Marino

21 Havana
Santo Trafficante Jr.
Louis Santos
Meyer Lansky
Frank Ragano
Salvatore Lucania aka Charles "Lucky" Luciano
Vito Genovese
Charles "Lucky" Luciano
Joseph Luciano
Bert Luciano
Joe Adonis aka Joe Doto
Frank Costello
Willie Moretti
Joe Fischetti
Charley Fischetti
William G. Bischoff
Giordano Cellin
Gabriel Graziani
Edward Levinson
Andre Artlasik
Dusty Peters
Joseph Silesi
Peter Stefanoff
Lawrence Allen Grilley
William Monroe?
Joseph Cotroney?
Joaquin Corro?
Vincente Cotrone?
Maria Cecilia Fosara
Norbarto Angel Porto....? Cerejido
Alberto Pennlas or Fennlas?
Jake Lansky
Julius Morrecaro?
Giuseppe Brindisi?
Lewis J. McWillie
Pedro Fox
Martin Fox
John "Johnny Williams" Guglielmo
Santo Sorge
Sam Giancana
John Roselli
Norman Rothman
John Angersola
Michael Coppola

Joseph J. DiCarlo
Joseph Massei
Charles Tourine
Paul DeLucia
Anthony Ricci
Louis Cohen*
Salvatore Italiano*
James C. Longo*
Longie Zwillman

21. Houston
Vic Fertitta
Anthony Fertitta
Sam Maceo
Rosario Maceo
Robert Ray "Dick" McKeown
Joseph P. Lucia

Attendees at Apalachin, N. Y.meeting in 1957 who are not listed above:

Joseph Barbara, Apalachin
Joseph Barbara Jr., Apalalchin
Ignatius Cannone, Endwell, N. Y.
Anthony F. Guarnieri, Endwell.
James V. LaDuca, Lewiston, N. Y.
Rosario Mancuso, Utica, N. Y.
Sam Monachino, Auburn, N. Y.
Patsy Monachino, Auburn.
Patsy Sciortino, Auburn.
Patsy (Pasquale) Turrigiano, Endicott, N. Y.
Emmanuel Zicari, Endicott

N,. B. Personal subpoenas were issued by US attorney for the Southern District
of New York to 16 individuals from the immediate metroplitan area who
attended the Apalachin conference. Siubpoenas to all others who resided within
500 miles of New York were in the works and Federal tax returns on all those
individuals were requested, according to Dec. 3 1957 memo to the director from
SAC New York. The memo came under the heading of the Top Hoodlum
program.