## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GEORGE LARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 03-cv-0874 (RCL) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.,* case comes before the court on cross-motions for summary judgment.  Plaintiff George Lardner ("Lardner") filed this action against defendants, Federal Bureau of Investigation ("FBI"), United States Department of Justice, Drug Enforcement Agency ("DEA"), and five other John Doe federal agencies.  The defendants filed a motion [50] for summary judgment, and the plaintiff filed a motion [51] for partial summary judgment, motion [58] to compel the release of records, and supplemental cross-motion [80] for summary judgment.  Upon consideration of the filings, the entire record herein and the relevant law, the Court will GRANT–IN–PART the defendants' motion for summary judgment, finding in favor of the defendants with respect to the reasonableness of the FBI's search for responsive records and DENY-IN-PART WITHOUT PREJUDICE as it pertains to the merits of the defendants' withholdings; and (2) GRANT–IN–PART plaintiff's motion for partial summary judgment with respect to the request ordering the defendants to reprocess all responsive records and DENY-IN-PART WITHOUT PREJUDICE as

it pertains to the merits of the defendants' withholdings.  The Court additionally DENIES the plaintiff's motion to compel as moot.[1]

## II.    BACKGROUND

### A.  Plaintiff's FOIA Requests

Lardner is a Pulitzer Prize winning journalist and author.  Pl.'s Supp. Mot. at 1.  By letters dated September 14, 1993 and January 21, 2003, Lardner filed FOIA requests, seeking access to an array of records pertaining to Aniello Dellacroce ("Dellacroce"), the Underboss of the Gambino Crime Family who died in 1985; Sam Giancana ("Giancana"), the deceased underboss of the Chicago Crime Family; and all records concerning the FBI's Top Hoodlum Program.  *Vaughn* Index, Hardy Second Supp. Decl.  ("Hardy Decl. 2") at 9-10.  A detailed description of the handlings of Lardner's requests is set forth below.

### 1.  FOIA Request Concerning Aniello Dellacroce

By letter dated January 21, 2003, addressed to FBIHQ, Lardner made a FOIA request for all records at FBIHQ and all FBI field offices concerning Dellacroce.  Hardy Decl. 2 at 9.  In addition, Lardner requested a search of all the electronic surveillance (ELSUR)[2] indices, including confidential source and informant files.  *Id.*  By letter dated February 3, 2003, FBIHQ acknowledged receipt of Lardner's FOIA request and assigned it FOIPA Request Number 972696.  Defs.' Mot. Summ. J., Hardy Supp. Decl. ("Hardy Supp. Decl.") at 13.  By letter dated October 20, 2005, FBIHQ released records concerning Dellacroce to Lardner.  *Id.* at 14.  By letter

---

[1] The Court denies as moot the plaintiff's motion to compel the release of records transferred to the National Archives and Records Administration.  The FBI agreed to process 600 pages per month beginning in July 2009, and the plaintiff filed this motion to compel release at a faster rate.  The FBI made its final release of material to the plaintiff on August 31, 2009, and therefore, this motion to compel is now moot.

[2] ELSUR (electronic surveillance) Indices are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as the result of a warrantless and/or consensual ELSUR or a court-ordered ELSUR conducted by the FBI.  Hardy Decl. 2 at 19.

dated December 21, 2005, FBIHQ made a further release of records concerning Dellacroce to plaintiff.  In this letter, the FBI advised Lardner that some documents concerning Dellacroce that originated with other agencies were referred to those agencies for direct response to him.  *Id.* at 15.

### 2.  FOIA Request Concerning the Top Hoodlum Program Prior to 1960

By letter dated September 14, 1993, addressed to FBIHQ, Lardner made a FOIA request for all records dated prior to 1960 concerning Sam Giancana and the FBI's Top Hoodlum Program.  *Id.* at 15.  By letter dated September 24, 1996, FBIHQ advised Lardner that this request was assigned FOIPA Request Number 380541.  *Id.* at 16.  By letter dated June 11, 2001, FBIHQ released 2,531 pages of documents to Lardner concerning this request.  *Id.* at 18.

### 3.  FOIA Request Concerning the Top Hoodlum Program from 1960 Forward

By letter dated January 21, 2003, addressed to FBIHQ, Lardner made a FOIA request for all records at FBIHQ, including ELSUR records, concerning the Top Hoodlum Program from 1960 forward and any successor or related program or files.  By letter dated February 3, 2003, FBIHQ acknowledged receipt of Lardner's FOIA request and assigned it FOIPA Request Number 972694.  Over the following three years, the FBI released tens of thousands of documents to Lardner concerning this request and the request for records prior to 1960.

### B.  Procedural History

On April 11, 2003, Lardner filed this complaint, requesting the release of all records of the FBI, DEA, and five other John Doe federal agencies pertaining to his FOIA requests.  On February 23, 2004, the parties filed a joint report with the Court and a signed stipulation in which the FBI agreed to process approximately 34,000 pages of investigative records concerning the Top Hoodlum Program prior to and after 1960.  The FBI also agreed to provide the Court and

Lardner with a Status Report regarding any documents referred to other agencies and agreed to attempt to track down documents designated as missing.[3]  Additionally, the FBI agreed to search the ELSUR indices in the 19 field offices.

Plaintiff selected 150 sample documents from the thousands of processed records so that the FBI could create a *Vaughn* index.  The FBI examined the 307 pages and filed its motion for summary judgment on November 24, 2008.  The plaintiff filed a motion for partial summary judgment on November 26, 2008, raising arguments as to the adequacy of the search and request for reprocessing of all responsive documents.

The FBI filed a *Vaughn* index on August 27, 2010.  The plaintiff subsequently filed a supplemental cross-motion for summary judgment on December 14, 2010.  Accordingly, the parties' cross-motions for summary judgment are now ripe for review.

## III.    ANALYSIS

### A.    Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." *Celotex Corp. v. Catrett*,

---

[3] In effectuating Lardner's FOIA requests, the FBI identified responsive records that originated from the DEA and IRS.  The FBI subsequently referred these documents to the corresponding agencies for processing.  The DEA and IRS submitted independent declarations explaining their withholdings of information under FOIA.

477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir.1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).  In a FOIA case, a court may award summary judgment to an agency upon the agency's showing that it conducted a search "reasonably calculated to uncover all relevant documents."  *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.1983).  The adequacy of a search is measured by a standard of reasonableness, which must be decided on a case by case basis.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is whether the search itself was adequate notwithstanding the fact that other responsive documents may exist.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  An agency is not required to search every record system, but must conduct a good faith, reasonable search of those record systems likely to possess the requested information. *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

### B.      Adequacy of the FBI's Search

FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b).  To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records.  *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents." *Id.* There is no requirement that an agency must search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search. *Short v. U.S. Army Corps of Engineers*, 593 F. Supp. 2d 69, 73 (D.D.C. 2009) (citing *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

### 1. Sam Giancana Records

Lardner challenges the sufficiency of the FBI's search regarding Sam Giancana records stating that, "while there are references to Giancana scattered throughout the records that have been provided, there appears to be no body of records on Giancana comprising a file or files, as such, and the existing volume appears to be far below what would be expected." Pl.'s Supp. Mot. at 5. Additionally, Lardner asserts that the National Archives advised him that 21 file boxes of material on Sam Giancana are located in their Kennedy Assassination Records Collection. *Id.* at 6. Therefore, Lardner asserts that the FBI's search is inadequate with regards to Sam Giancana. *Id.*

In response, the FBI filed three detailed declarations of David M. Hardy, describing the document search for Giancana.  Mr. Hardy is the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI.  Hardy Decl. 2 at 1.  His duties include supervising 277 employees whose collective mission is to effectively plan, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA.  *Id.* at 1-2.  Mr. Hardy indicates in his declaration that the FBI searched two databases of the Central Records System ("CRS")[4] for any records pertaining to Giancana.  *Id.* at 21.  Specifically, the FBI searched both the Automated Data Base ("ADB") and the Inactive Indices of the CRS.[5]  *Id.*  According to Mr. Hardy's third supplemental declaration, following this search of the main records at the headquarters, the FBI released 38 pages of information (in full or part) to Lardner in 1998 concerning Giancana.

"The question is not whether any other documents possibly responsive to the request exist, but rather whether the search for those documents was adequate."  *Steinberg*, 23 F.3d at 551 (citation and internal quotation marks omitted).  It is the plaintiff's burden in challenging the adequacy of an agency's search to present evidence rebutting the agency's initial showing of a good faith search.  *See Maynard v. Central Intelligence Agency*, 986 F .2d 547, 560 (2d Cir. 1993); *Weisberg*, 705 F.2d at 1351–52.  Lardner suggests, without support, that additional responsive records must exist.  Mere speculation as to the existence of records not located as a result of the agency's search does not undermine the adequacy of the search.  *See Weisberg,* 745 F.2d at 1485 (focus of Court's inquiry is on reasonableness of search, not whether undisclosed

---

[4] The CRS records consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  Hardy Decl. 2 at 16.

[5] The ADB contains all records dated after January 1, 1958 for national security, applicant and administrative matters, and after January 1, 1973 for criminal investigative matters.  The Inactive Indices contains all records dated prior to 1958 for national security, applicant and administrative matters and all records dated prior to 1973 for criminal investigative matters.  Hardy Decl. 2 at 21 n.20.

records may exist).  Additionally, Lardner's affidavit that the National Archives has a voluminous collection of records on Giancana does not create a justifiable inference that the FBI possesses the same records and is withholding them.  Lardner does not specify which offices these records originated from or their respective dates.  However, Lardner's initial FOIA request specifically sought pre-1960 records and was addressed to the FBIHQ office.  Therefore, without additional information regarding the records contained in the 21 boxes, Lardner fails to present sufficient evidence that these records would indeed contain responsive documents to his request. Thus, the Court cannot find the defendants' search inadequate as it pertains to records on Giancana.

### 2.    Aniello Dellacroce Records

Lardner challenges the sufficiency of the defendants' search for Aniello Dellacrose records because the FBI did not provide him with records from Dellacroce's informant file.  Pl.'s Supp. Mot. at 6.  In support of this assertion, Lardner argues that, in a previous case, the FBI admitted it does not search confidential indices without third-party privacy waivers.  Pl.'s Reply to Defs.' Opp'n to Pl.'s Supp. Mot. ("Pl.'s Reply") at 6.  Therefore, Lardner argues that a separate index exists, and the FBI failed to conduct a search of it.  *Id.*  Lardner additionally argues that the FBI failed to conduct any search for Dellacrose records in its field offices.  *Id.* at 7.  Finally, Lardner argues that the FBI's search is inadequate because he did not receive actual photographs, but instead he received copies of Dellacrose.  Pl.'s Supp. Mot. at 9.

In response, Mr. Hardy's affidavit states that, "the FBI searched the indices to the CRS at FBIHQ for mains and cross-references on Aniello Dellacroce . . . . Any confidential [indices] files would be located through a search of the FBI's automated CRS."  Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J., Hardy Third Supp. Decl. ("Hardy Decl. 3") at 5.  The

defendants additionally argue that Lardner did not submit separate requests to any of the FBI's field offices for records Dellacroce as required by 28 C.F.R. Section 16.3(a).  In response to Lardner's request for the original photographs of Dellacroce, the defendants cite Lardner's original request, which states, "[t]his is a request . . . for access to and copies of the following records."  Pl.'s Reply, Ex. C.  The defendants argue that because Lardner requested *copies* of the records, the FBI adequately complied with his request.

As an initial matter, the Court fails to see how Lardner's argument concerning whether or not he received copies or originals of photographs qualifies as a challenge to the sufficiency of the search.  Additionally, Lardner's evidence regarding the existence of a separate confidential index is insufficient to rebut the agency's showing of a good faith search.  Dellacroce died in 1985, and therefore, the FBI would not need to obtain his consent prior to searching through the applicable records as it did in Lardner's aforementioned case.  Thus, Lardner fails to provide the Court with any convincing evidence that rebuts the defendants' assertion that all confidential files were searched through the CRS search.

In addressing Lardner's argument that the FBI failed to search each individual field office for records on Dellacroce, the Court notes that an agency subject to the FOIA is required to disclose records in response to a FOIA request *only if* certain conditions are met.  One of those conditions is that the requester must submit a FOIA request "in accordance with published rules stating the time, place, fees (if any) and procedures to be followed."  5 U.S.C. § 552(a)(3).  The FBI has published regulations specifying the procedures to be followed in submitting a FOIA request, which require in the instant case, that Lardner submit a separate request to each FBI field office that he seeks records from.  *See* 28 C.F.R. § 16.3(a).  Lardner does not dispute the fact that he addressed his Dellacroce FOIA request to the FBI's Washington D.C. Headquarters.

Pl.'s Reply, Ex. D.  Thus, Lardner did not comply with the applicable FBI FOIA regulations and

thus did not effectively initiate a FOIA request, let alone exhaust his administrative remedies as

he is required to do. "The failure to comply with an agency's FOIA regulations [in submitting a

request] is the equivalent of a failure to exhaust."  *West v. Jackson*, 448 F. Supp. 2d 207, 211

(D.D.C. 2006); *see also Flowers v. IRS*, 307 F. Supp. 2d 60, 67 (D.D.C. 2004) (stating that "

'failure to file a perfected request therefore constitutes failure to exhaust administrative remedies'

") (quoting *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002)).

### 3.     ELSUR Material

Lardner next challenges the sufficiency of the search by arguing that the pre-1960

ELSUR indices search, which turned up no records, was inadequate because he believes these

records must exist.  *Id.* at 10.  In support of this assertion, Lardner points to eighty JUNE MAIL[6]

serials from 1968 that were generated by searching for Giancana records.  Pl.'s Reply at 11.

This, Lardner argues, indicates that far more responsive records exist than were provided to him.

*Id.*

Hardy's declaration states that the FBI conducted an automated ELSUR search for

records dated after 1960, as well as a manual search of the 3x5 ELSUR index cards containing

records prior to 1960.  Hardy Decl. 3 at 5.  This manual search included seven boxes of cards for

over 500 search terms/subjects as requested by Lardner's April 15, 2004 faxed list.  Hardy

asserts that this search was the most likely method to uncover any documents responsive to

Lardner's requests.  *Id.* at 6.

---

[6] JUNE MAIL refers to certain documents concerning microphone or telephone surveillance which are
filed separately from the main file and maintained in the Special File Room, which is a secure storage
facility within FBIHQ to which access is restricted.  Defs.' Mot. for Summ. J., Hardy Supp. Decl. at 23
n.21.

Lardner's assertion that the existence of responsive ELSUR records from 1968 indicates that pre-1960's responsive records must exist as well is simply insufficient to withstand summary judgment. As previously stated, mere speculation as to the existence of records not located as a result of the agency's search does not undermine the adequacy of the search. *See Weisberg*, 745 F.2d at 1485.

### 4. Missing Files

Lastly, Lardner argues that the files deemed "missing" are unsatisfactory. Pl.'s Reply at 11. He asserts that the FBI has not provided sufficient details regarding the process used to locate missing files, and further, why this process failed to locate all responsive records. *Id.*

Hardy's declaration states that some Top Hoodlums files were placed on "special locate" and continue to be missing. Hardy Decl. 3 at 6. He further states missing files are either "In File" but unable to locate, or "Charged Out" to another employee but unable to locate. *Id.* at 7. In this type of situation, the employee responsible for the search will look for the file on the shelf or in any of the expected areas and follow up with the last employee to check out the file; however, in this situation, these efforts did not locate every document deemed missing. *Id.*

Although missing files are understandably frustrating to Lardner, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them. *Miller*, 779 F.2d at 1384-85; *see also Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978). Lardner's attorney attempts to salvage this argument by referencing his own personal experience finding missing books as a librarian's assistant in college. This argument is completely inadequate to withstand summary judgment.

Therefore, the Court does not find that Lardner has demonstrated the lack of a good faith search for the missing records.

### C.      Plaintiff's Request for Reprocessing

In addition to arguing that the defendants failed to adequately search for records, Lardner requests that the defendants reprocess all responsive documents because in submitting its *Vaughn* index, the defendants released additional information on 219 of the 289 documents Vaughned. *Id.* Thus, Lardner asserts that a 76% error rate in the *Vaughn* index mandates a reprocessing of all additional responsive documents. *Id.* The defendants argue that the newly released information was the result of discretionary releases of third party names and information previously withheld under Exemptions (b)(6) and (b)(7)(C), not pure error. Defs.' Opp'n to Pl.'s Supp. Cross-Mot. for Summ. J. at 6. Further, the defendants argue that, in order to achieve maximum disclosure, it additionally reprocessed all records involving Exemption (b)(1) and (b)(5) in the sample. *Id.*

"Because of its unique evidentiary configuration, the typical FOIA case 'distorts the traditional adversary nature of our legal system's form of dispute resolution.' " *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006) (quoting *King v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987)). "When a party submits a FOIA request, it faces an 'asymmetrical distribution of knowledge' where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." *Id.* (quoting *King*, 830 F.2d at 218). Accordingly, the FOIA places the burden on the agency to establish its right to withhold information under one of the enumerated FOIA Exemptions. *Id.* An agency may do so through producing a *Vaughn* index, which is an affidavit that indexes and specifically describes withheld or redacted documents and explains why each withheld record, is exempt from disclosure. *King*, 830 F.2d at 219. The index thus

helps restore the normal adversarial balance by "forc[ing] the government to analyze carefully any material withheld," thereby enabling "the trial court to fulfill its duty of ruling on the applicability of the exemption" and enabling "the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Keys v. DOJ*, 830 F.2d 337, 349 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

As the D.C. Circuit has made clear, "it is the function, not the form, of the index that is important." *Id.* "Any measure will adequately aid a court if it 'provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat [es] those claims with the particular part of a withheld document to which they apply.' " *Judicial Watch*, 449 F.3d at 146. While there is no set form for a *Vaughn* index, the D.C. Circuit has noted three important elements for an adequate *Vaughn* index: (1) the index should be one document that is complete in itself, (2) the index must adequately describe the withheld documents or deletions, (3) the index must state the particular FOIA exemption, and explain why the exemption applies. *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

As is particularly relevant here, "[r]epresentative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991). "Representative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection. If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.' " *Id.*

(quoting *Fensterwald v. CIA*, 443 F. Supp. 667, 669 (D.D.C. 1977)); *see also Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986).  However, the D.C. Circuit has cautioned that "the technique will yield satisfactory results only if . . . the documents in the sample are treated in a consistent manner."  *Bonner*, 928 F.2d at 1151.

The defendants' *Vaughn* index is, in a word, inadequate.  In re-processing the sample documents for preparation of the *Vaughn* index, the FBI determined that information previously withheld out of concern for privacy did not warrant continued exclusion.  The FBI provides no additional justification in any of Hardy's declarations as to why these documents were suddenly deemed proper for release.  As previously stated, a *Vaughn* index, if done properly, allows the parties and court to examine the withholding justifications through a *representative sampling*.  While the fact that "some documents in a sample become releasable with the passage of time does not, by itself, indicate any agency lapse," *Bonner*, 928 F.2d at 1153, here, the sheer magnitude of the additional releases indicates that the sample is not an accurate illustration of the whole.

Additionally, the defendants' *Vaughn* index indicates that the FBI withheld a significant amount of information under Exemption (b)(2).  On March 7, 2011, the U.S. Supreme Court decided the case of *Milner v. Dep't of the Navy*, 131 S. Ct. 1259 (2011).  In *Milner,* the Court curtailed the application of FOIA Exemption 2, holding that it is applicable only to records relating to the issues of employee relations and human resources.  *Milner,* 131 S. Ct. at 1271.  The Supreme Court held that the Department of the Navy, therefore, could not assert Exemption 2 as grounds for withholding sensitive explosive maps and data based on the argument that the materials presented a risk of circumvention of agency regulation, otherwise known as "High 2."  *Id.*  Here, the FBI similarly withheld a significant amount of information under "High 2."  In

light of the *Milner* decision, a reprocessing of the responsive documents is justified to allow the FBI to release additional information previously withheld solely under Exemption 2.

Accordingly, the Court shall grant the plaintiff's motion for partial summary judgment and shall require the FBI to reprocess the responsive documents and provide the Court and plaintiff with a single, comprehensive *Vaughn* index.  In addition, in light of the Court's determination that the defendants must provide a complete *Vaughn* index before either the Court or plaintiff can properly evaluate the defendants' withholdings and its processing of the sample records, the Court shall deny without prejudice the parties' cross-motions as they pertain to the merits of the defendants' withholdings.  Finally, the parties are required to meet and confer and submit a joint status report no later than 20 days from today, suggesting a schedule for the defendants' submission of a final *Vaughn* index and, as appropriate, for the subsequent filing of dispositive motions with respect to the merits of the defendants' withholdings.

## IV.    CONCLUSION

For the reasons set forth above, the Court shall: (1) GRANT–IN–PART the FBI's [50] motion for summary judgment, finding in favor of the defendants with respect to the reasonableness of the FBI's search for responsive records and DENY-IN-PART WITHOUT PREJUDICE as it pertains the merits of the defendants' withholdings; (2) GRANT–IN–PART plaintiff's [51] motion for partial summary judgment with respect to the request ordering the defendants to reprocess all responsive records and DENY-IN-PART WITHOUT PREJUDICE as it pertains to the merits of the defendants' withholdings.  The defendants are therefore required to submit a final and complete *Vaughn* index that accounts for all documents.  This index will be created from a new sample of documents to be identified by the plaintiff after the defendants complete their reprocessing of all responsive records.  Upon submission of the defendants' final

*Vaughn* index, the parties may re-file their cross-motions as to the merits of the defendants' withholdings, as appropriate.   Additionally, although it is unclear to the Court whether the documents for the original *Vaughn* index contained withholdings from the DEA and IRS, both agencies shall also be required to reprocess their respective responsive records as outlined in this Memorandum Opinion.   Accordingly, the parties are required to meet and confer and submit a joint status report suggesting a schedule for submission of a new *Vaughn* index no later than 20 days from today.   In preparing a schedule, counsel should be keenly aware of both the age of the requests here as well as the age of this litigation.   The time has come to bring this case to a conclusion.   Additionally, the Court DENIES as moot the plaintiff's motion [58] to compel the release of records.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on April 4, 2012.