UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
GEORGE LARDNER,                )
                               )
    Plaintiff,             )
                               )
v.                             )        Civil Action No. 03-0874 (RCL)
                               )
FEDERAL BUREAU OF              )
INVESTIGATION, et al.,         )
                               )
    Defendants.            )
_____)

## MEMORANDUM OPINION

### I. INTRODUCTION

Pending before the Court is plaintiff George Lardner's ("Lardner") Motion For Partial Reconsideration of this Court's April 4, 2012, Judgment and Memorandum Opinion [99]. Lardner's quest for responsive documents began in 1993, when he filed his first Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, request. Notwithstanding the fact that many years passed before Lardner received a response from the government, Lardner persevered in his battle for responsive records. The Court granted in part and denied in part the defendants' Motion for Summary Judgment on April 4, 2012, determining that the defendants adequately searched for responsive records. After receiving notice of the Court's decision, plaintiff now requests that the Court partially reconsider its judgment. Specifically, plaintiff asks this Court to re-evaluate its decision because he believes that the Court committed a "clear error" in its Memorandum Opinion. Upon consideration of the Motion, the Opposition, the Reply thereto, the applicable law, and the entire record herein, the Court denies the plaintiff's Motion for the reasons set forth below.

## II.     BACKGROUND[1]

Lardner is a Pulitzer Prize winning journalist who filed FOIA requests on September 14, 1993 and January 21, 2003.  Supp. Hardy Decl. [50-2] ¶ 24.  Lardner seeks access to an array of records pertaining to Aniello Dellacroce ("Dellacroce"), the Underboss of the Gambino Crime Family who died in 1985; Sam "Moomoo" Giancana ("Giancana"), the deceased underboss of the Chicago Crime Family; and all records concerning the FBI's Top Hoodlum Program ("THP").  *Vaughn* Index, Hardy Second Supp. Decl. 9–10; Pl.'s Reply [108] at 1.  Shortly after filing his second FOIA request, Lardner filed suit in the United States District Court for the District of Columbia, requesting the release of all records from the Federal Bureau of Investigation ("FBI"), Drug Enforcement Agency ("DEA") and five other Jon Doe Federal Agencies pertaining to his FOIA requests.  Mem. Op. [99] at 3.  Before the Court ruled on the cross-motions for summary judgment, the FBI agreed to the following: (1) to process approximately 34,000 pages of investigative records concerning the THP prior to and after 1960; (2) to provide Lardner with a Status Report; and (3) to search the Electronic Surveillance Indices ("ELSUR") in nineteen field offices.[2]  *Id.*  In addition, the FBI filed a *Vaughn* Index on August 27, 2010, created from 150 sample documents that the plaintiff aided in choosing.[3]  *Id.* at 4.

After a thorough review of the motions before the Court and the plethora of evidence that both parties submitted in support of their respective positions, this Court granted in part the defendants' motion for summary judgment.  Mem. Op. at 1.  The Court ruled in favor of the

---

[1] As this is the second Memorandum Opinion addressing the merits of this case, the Court will merely provide a brief overview of the pertinent facts relevant to plaintiff's most recent claims.  A more detailed description of the factual and procedural background can be found in this Court's April 4, 2012 Memorandum Opinion.  *See Lardner v. Federal Bureau of Investigation*, 03-CV-0874, 2012 U.S. Dist. LEXIS 47063 (D.D.C. Apr. 4, 2012).

[2] ELSUR Indices are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as the result of a warrantless and/or consensual ELSUR or a court-ordered ELSUR conducted by the FBI.  Hardy Decl. 2 at 19.

[3] The Court notes that *Vaughn* Index focuses on records regarding Dellacroce and THP because "none of the documents in Plaintiff's Sample of Documents are from the documents released to plaintiff pursuant to his Giancana FOIA request."  Supp. Hardy Decl. at 4 n. 7.

defendants with respect to the reasonableness of the FBI's search for responsive records. *Id.* This Court, however, ruled in favor of the plaintiff with regard to this request ordering the defendants to reprocess all responsive records. *Id.* Within twenty-eight days of the Court's ruling, plaintiff presented the Court with this Motion for Partial Reconsideration, asking the Court to reconsider its opinion regarding the adequacy of the defendants' search. Pl.'s Mot. [102] Partial Recons. at 2. Plaintiff argues that the Court committed a "clear error" when it determined that the FBI's search was adequate, particularly with regard to Giancana and Dellacroce. *Id*. Plaintiff makes the following arguments in support of his motion for reconsideration with regard to Giancana: that (1) the FBI failed to search for or locate additional responsive records and that (2) the FBI conducted inadequate searches of the Automated Databases ("ADB") and the Inactive Indices. Pl.'s Mot. at 1–9. With regard to Dellacroce, plaintiff makes the following arguments in support of his motion for reconsideration: that (1) the FBI failed to search the Confidential Source Indices for documents; (2) the FBI is invoking the "Glomar defense"[4] without acknowledging that it is doing so regarding "new evidence" that Dellacroce was an FBI informant; (3) the FBI failed to search for and produce copies of audio/videotapes and photographic records requested by the plaintiff; (4) the FBI failed to search for and disclose entire sections of FBI files; and (5) the FBI failed to search other field offices, notwithstanding the fact that the plaintiff failed to submit a FOIA request to each individual office. *Id.* at 10–17. Finally, plaintiff disputes the Court's determination that summary judgment was appropriate, arguing that there are disputed issues of material fact, thus making summary judgment inappropriate. Instead, plaintiff asks the Court to allow discovery on the disputed

---

[4] A "Glomar response may be issued in place of a statement acknowledging the existence of the responsive records by withholding them, if confirming or denying the existence would associate the individual named in the request with criminal activity." *Nation Magazine, Washington Bureau v. United States*, 71 F.3d 885, 893 (D.C. Cir. 1995).

3

search issue pursuant to Rule 56(f). *Id.* at 17–18. For the reasons explained below, this Court denies the plaintiff's motion.

## III. LEGAL STANDARD

Plaintiff seeks reconsideration of the Court's Memorandum Opinion and Order pursuant to Rules 52(b) and 59(b).[5] While these rules are certainly applicable to the current motion, these rules fail to establish the standard that a Court must use in assessing such motions. Instead, this Court will look to Rule 59(e), which permits a party to file a motion to alter or amend a judgment, for guidance in evaluating a plaintiff's motion for reconsideration. Fed. R. Civ. P. 59(e). Rule 59(e) motions are "disfavored" and are reserved for "extraordinary circumstances." *Liberty Prop. Trust v. Republic Props. Corp.*, 570 F. Supp. 2d 95, 97 (D.D.C. 2008) (quoting *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)). "Extraordinary circumstance[s]" include (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057–58 (D.C. Cir. 1998). Re-litigating arguments or legal theories that could have been raised earlier do not qualify as an "extraordinary circumstance" under Rule 59(e). *See Taylor v. DOJ*, 268 F. Supp. 2d 34, 35 (D.D.C. 2003). "New evidence" under Rule 59(e) applies to evidence that "was not previously available," as opposed to newly asserted facts. *See Messina v. Fontana*, 439 F. 3d 755, 759 (D.C. Cir. 2006). Additionally, Rule 59(e) motions are not vehicles that disgruntled plaintiffs may use to litigate novel claims or assert innovative legal theories for the first time. *See Lurie v. Mid-Atlantic Permanente Medical Group, P.C.*, 787 F. Supp. 2d 54, 63 (D.D.C. 2011). With regard to "clear error," Courts have not generally

---

[5] A Rule 52(b) motion, which may "accompany a motion for a new trial under Rule 59," permits a court to "amend its finding—or make additional findings—and . . . amend the judgment accordingly" if the motion is "filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 52(b). Rule 59(b) establishes that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b).

defined what constitutes "clear error" under Rule 59(e). *Lightfoot v. Dist. of Columbia*, 355 F. Supp. 2d 414, 422 (D.D.C. 2005). What can be learned from the scarce case law on the subject, however, is that clear error should conform to a "very exacting standard." *Id.* (quoting *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir. 2000)). District Courts should have "a clear conviction of error" before finding a final judgment was predicated on clear error. *Id.* The Seventh Circuit declared that a final judgment must be "dead wrong" to constitute clear error. *Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

IV. **ANALYSIS**

    A. **Sam Giancana Records**

Plaintiff argues that the FBI failed to adequately search for records regarding Giancana. Specifically, plaintiff rebuts the Court's determination that the FBI (1) searched for or located additional responsive records and (2) that the FBI conducted adequate searches of the ADB and the Inactive Indices. Plaintiff offers the following arguments in support of his argument that the FBI failed to search for or locate additional responsive records. Prior to the Court's issuance of its Memorandum Opinion, plaintiff informed the Court that the National Archives and Records Administration ("NARA") contacted him, explaining "that it had 21 boxes of records on Giancana in its President John F. Kennedy Assassination Records Collection." Pl.'s Mot. Recons. at 3. Plaintiff argues that his inference—that "the FBI may very well also have retained copies of the 21 boxes of Giancana records transferred to NARA" —indicates that the FBI did not do an adequate search. *Id.* at 4. The basis for plaintiff's inference rests on a statement in David Hardy's ("Hardy") declaration. *Id.* Although the Court dismissed plaintiff's inferences in its Memorandum Opinion as merely speculative and lacking evidentiary support, plaintiff

persists in believing that a justifiable inference follows from NARA's allegation. Mem. Op. at 7–8.

In response to plaintiff's argument, defendant argues that plaintiff misrepresented a particular section of Hardy's declaration, a misrepresentation that would allow him to draw these inferences. Defendant explains that the plaintiff's statement—"the FBI agreed to process approximately 1,790 pages of the JFK Act records on Giancana which it had retained in its possession"—is false. Pl.'s Mot. at 4. Defendant argues that these copies did not specifically pertain to Giancana as the relevant portion of Hardy's declaration merely stated that "[a]s a result of the search for documents accessioned to NARA, the FBI located approximately 1,790 pages of material." Status Decl. of David M. Hardy [57-1] ¶ 10. Defendant argues that nowhere in the declaration does it state that the 1,790 pages specifically referred to Giancana. *Id.*

It is established law that an agency "'need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access,' i.e., making records available in a reading room." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 70 (D.C. Cir. 1990) (quoting *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060, 1065 (D.C. Cir. 1988)). In the present case, the record reflects that the documents that Lardner seeks "are open to the public and researchers may access the original documents in NARA's Textual Research Room at the National Archives Building in College Park, Maryland." Status Decl. of David M. Hardy ¶ 10. Although the FBI should have released these documents to Lardner in a timely fashion, since they are now publicly accessible, plaintiff has the ability to review the records. Notwithstanding this point, plaintiff's argument fails because he is merely re-litigating a stale legal theory, which will not be entertained under a Rule 59(e) motion. *See Taylor*, 268 F. Supp. 2d at 35.

6

Plaintiff's second argument alleges that the FBI failed to search its Inactive Indices and ADB for responsive records. In support of this argument, plaintiff explains that "no description is given to indicate how this data was compiled, [or] how the subjects of the index were selected for inclusion." Pl.'s Mot. at 7. Plaintiff also argues that the FBI's failure to search more than one of the nine CRS databases failed to take into account recent case law. *Id.*; *see Negley v. F.B.I.*, 658 F. Supp. 2d 50, 57 (D.D.C. 2009) (explaining that a "[d]efendant cannot limit its search to only one record system, which in this case was the UNI,[6] if there are others that were likely "to turn up the information requested."). Finally, plaintiff argues that even if the FBI failed to search the "ZY" database, it is plausible that the FBI created another major case file, named "La Cosa Nostra" or "organized crime," that could be responsive to Lardner's search. Pl.'s Reply at 7. Plaintiff argues that the FBI should have disclosed, at minimum, whether such a file existed or whether it searched for such a file. *Id.*

In response, the FBI counters plaintiff's argument that it failed to search the Inactive Indices of the Central Records System ("CRS") by describing the CRS and by explaining that it conducted a hand search for responsive records.[7] Def.'s Opp. at 5; Supp. Hardy Decl. ¶ 91. The FBI asserts that it conducted a "reasonable" search, arguing that it "searched the most likely places to contain records regarding the subject matter (Sam Giancana)." Def.'s Opp. at 5.

Contrary to plaintiff's argument that the FBI failed to describe its search methods, the Court determines that the FBI adequately searched for responsive documents. Indeed, the FBI detailed the process that it utilized when it manually searched through index cards for responsive

---

[6] The "UNI" is "an index of approximately 99.7 million records, [that] functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event." Supp. Hardy Decl. ¶ 85(c).

[7] The CRS records consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. Second Hardy Decl. at 16.

7

files. Supp. Hardy Decl. ¶ 87–92. The standard for determining whether a search was adequate depends on the adequacy of the search for documents, not whether additional potentially responsive documents exist. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). An adequate search consists of a good faith, reasonable search of those systems of records *likely* to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In fact, within the CRS, the FBI searched the ADB and the Inactive Indices for responsive files, ultimately finding "several FBIHQ main files [that] were identified as responsive to plaintiff's FOIA requests concerning these subjects." Supp. Hardy Decl. ¶ 91; Def.'s Opp. at 4. Although plaintiff continues to assert that the FBI created a major case file with regard to Giancana, this Court has already explained that mere speculation as to the existence of records not located as a result of the agency's search does not undermine the adequacy of the search. Mem. Op. at 7; *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Although plaintiff cites *Negley* for support, *Negley* is not applicable in the current situation. 658 F. Supp. 2d at 58. In *Negley*, the Court reasoned that the FBI failed to adequately search for responsive records because the FBI only searched a single database, the "UNI", for responsive records although eight other databases existed. *Id.* The distinction between *Negley* and the present case is that in *Negley*, the plaintiff was somehow involved in the UNABOMB investigation, thus making it reasonable for the agency to search the "ZY" database for responsive records, which the FBI failed to do. *Id.* Here, the FBI explained that the ADB and the Inactive Indices were the databases most likely to contain responsive records—the FBI had no reason to search the "ZY" database for files related to Lardner's FOIA request because his

subjects did not remotely relate to the UNABOMB investigation.[8]  The FBI adequately searched for responsive documents since an agency is only required to search in the places "likely" to possess responsive records.  *See Oglesby*, 920 F.2d at 68.

    **B.**    **Aniello Dellacroce Records**

Plaintiff raises five issues regarding the FBI's search for records concerning Dellacroce.  First, plaintiff alleges that the FBI failed to search its Confidential Source Indices for records.  Pl.'s Mot. at 10.  Essentially, plaintiff argues that since the FBI has not denied that a Confidential Source Index exists regarding Dellacroce, an index must exist and he is entitled to those records.  *Id.*  In response, FBI argues that plaintiff merely "speculates" regarding the existence of a "'separate, independent index' other than the CRS."  Def.'s Opp. at 6.  The FBI asserts that if these confidential files existed, they would have been "located through a search of the FBI's automated CRS."  *Id.*

In accordance with the requirements for an adequate search, the FBI searched several databases within the CRS for responsive documents regarding Dellacroce.  *Id.*  Plaintiff does not proffer any proof that such responsive documents would exist in the Confidential Source Indices, other than asserting that the FBI, on "an official form," searches the Confidential Source Indices for responsive records.  Pl.'s Mot. at 10.  Hardy, however, explained that the FBI "does not maintain any separate 'confidential source' and 'confidential informant' indices . . . [because the] files of confidential sources of the FBI can be located through a search of the CRS."  Supp. Hardy Decl.  Since confidential sources are included in a search of the CRS—which included the ADB and the Inactive Indices in this case—the FBI conducted an adequate search.  Def.'s Opp. at 6.  Finally, as this Court has already noted, mere speculation as to the existence of records not

---

[8] The "ZY" database "was created for the UNABOMB file in relation to the UNABOMB case."  Fifth Hardy Decl. ¶ 5(b).

located as a result of the agency's search does not undermine the adequacy of the search. *See Weisberg*, 745 F.2d at 1485.

Second, plaintiff asserts that he is now in possession of "new evidence" regarding the FBI's search of the Confidential Source Indices. Specifically, plaintiff alleges that he has "new evidence," proving that Dellacroce was an FBI informant. Pl.'s Mot. at 11. Plaintiff proffers a list of informants, speculating that "T-3" is Dellacroce, and he asks "the court (sic) to determine whether that is true or not." Pl.'s Mot. at 10. Relying on *Memphis Commercial Publishing Company v. FBI*, No. 10-1878, 2012 U.S. Dist. LEXIS 11616 (D.D.C. Jan. 31 2012), Lardner alleges that the FBI, by not releasing Dellacroce's information to him, is invoking the "Glomar defense" without acknowledging that it is doing so. Pl.'s Mot. at 10. The FBI counters Lardner's allegations by denying that it ever identified Dellacroce as an FBI informant. Def.'s Opp. at 6.

Plaintiff's reliance on *Memphis Commercial Publishing* is misplaced. In *Memphis*, the FBI disclosed information—when it publicly released information pertinent to the plaintiff's FOIA request—that "clearly showed" that the person in question was an FBI informant. *Memphis Publ'g Co.*, LEXIS 11616 *11. Here, however, the FBI did not release any information regarding Dellacroce's status as an informant, nor can plaintiff cite to any evidence in the record that would support his argument. Pl.'s Mot. at 11. Indeed, plaintiff asks this Court to "determine whether" T-3, is in fact Dellacroce and would thereby qualify as an FBI informant. *Id.* at 10. Lardner fails to appreciate that, mere speculation, or deduction on his part, does not constitute official acknowledgement on the part of an agency. *Valfells v. CIA*, 717 F. Supp. 2d 110, 118 (D.C. Cir. 2010). Since the plaintiff cannot point to evidence that would constitute "acknowledgement" on the part of the FBI, and since the Court cannot find any corresponding

10

support in the Record, plaintiff cannot rely on *Memphis Publishing* to support his argument with regard to Lardner's FOIA request.

Third, plaintiff argues that since the FBI failed to provide Lardner with photographic copies of photographs and photographic albums (they were provided in Xerox form), the FBI failed to adequately search for responsive records. Pl.'s Mot. at 12. In response, defendant argues that it complied with plaintiff's request, providing photocopies of available photographs in its records. Def.'s Opp. at 6.

Plaintiff's argument fails—an agency satisfies its obligations under FOIA if it provides records in *any* format. *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006). Here, the FBI provided photocopies of the records plaintiff requested, thus fulfilling plaintiff's FOIA request. Pl.'s Mot. at 12. If plaintiff wanted the negatives of the photographs, he should have specified that in his original FOIA request—he cannot use this Motion for Partial Reconsideration to re-litigate a tired argument. *See Taylor*, 268 F. Supp. 2d at 35.

Fourth, plaintiff argues that the FBI failed to disclose entire sections of FBI files, alleging that Hardy's declarations do not provide any details regarding the FBI's search methodology. Pl.'s Mot. at 14. Without this search methodology, plaintiff asserts that it would be impossible for the Court to determine whether the FBI conducted a good faith search. *Id.* In response, the FBI argues that plaintiff merely rehashes an old argument—plaintiff seems to believe that if there are missing files, it must follow that the FBI failed to adequately search for them. Def.'s Opp. at 6. Defendant offers various declarations of Hardy, which provide information regarding the procedure that the FBI utilized to search for missing files, to prove that the FBI adequately searched for the files that Lardner requested. *Id.* at 6, 7.

The Court again notes that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994); *see also Nation Magazine*, 71 F.3d at 892 n. 7 (explaining that "there is no requirement that an agency [locate] all responsive documents"). Whether an agency utilized "appropriate" methods in its search is governed by the reasonability of its search methods. *Ramstack v. Dep't of the Army*, 607 F. Supp. 2d 94 (D.D.C. 2009). A search for responsive documents will not be considered "unreasonable" merely because "it fails to produce all relevant material; [as] no search of this [large] size will be free from error." *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986); *see also Snyder v. CIA*, 230 F. Supp. 2d 17, 21 (D.D.C. 2002) (stipulating that FOIA does not require a search of "every conceivable area where responsive records might be found").

Plaintiff's argument lacks support. Plaintiff merely speculates regarding the existence of these missing files, failing to cite any new evidence that would support his contentions. Pl.'s Mot. at 14. This Court has explained, ad nauseam, that mere speculation regarding the existence of records is not a sufficient basis for challenging the adequacy of an agency's search. *Weisberg*, 745 F.2d at 1485. Although the plaintiff argues that the FBI failed to provide details of its search procedures, the FBI provided sufficient information for this Court to determine that its search was reasonable. Supp. Hardy Decl. ¶ 69. Furthermore, plaintiff alleges that the FBI failed to adequately search for records regarding Dellacroce, yet he admits that the "missing records" that he seeks are mainly pertinent to his THP request. Pl.'s Mot. at 14. Plaintiff cannot question the adequacy of the FBI's search when the basis for his argument pertained to a different portion of Lardner's FOIA request that is not at issue in the current Motion. *See Lurie*, 787 F. Supp. 2d at 63.

Finally, in its Memorandum Opinion, this Court observed that Larder failed to comply with the applicable FOIA regulations and thus did not "effectively initiate a FOIA request." Mem. Op. at 10.  Plaintiff argues that the Court's reliance on 28 C.F.R. § 16.3(a) is misplaced, since "the FBI agreed to search a large number of field office files for ELSUR materials even though he submitted no requests to those field offices."  Pl.'s Mot. at 17.  Plaintiff thus infers that since the FBI searched a large number of field office files for ELSUR materials (without receiving individual requests), the FBI could do the same for the records in this portion of plaintiff's FOIA request.  *Id.*  In response, defendant merely points to 28 C.F.R. § 16.3(a), which requires a party seeking records from the FBI to file requests with separate field offices.

A FOIA request must be made in accordance with an agency's "published rules stating the time, place, fees (if any) and procedures to be followed" in making such a request.  5 U.S.C. § 552(a)(3)(A).  A request for records maintained by a particular FBI field office must be submitted directly to that field office.  28 C.F.R. § 16.3(a).  The FBI is not obligated to undertake a search of its field offices' records when a requester submits his request only to its headquarters. *See Oglesby*, 920 F.2d at 68 ("There is no requirement that an agency search every record system."); *Church of Scientology of California v. Internal Revenue Service*, 792 F.2d 146, 150 (D.C. Cir. 1986) (when agency regulations require that FOIA request be submitted to specific office and requester does not follow regulations, agency not obligated to search additional offices); *Marrera v. United States Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985) (noting that an agency is not required to "search every division or field office in response to a FOIA request.").

Plaintiff's argument lacks support.  The FBI and Lardner stipulated and agreed that the FBI would search nineteen field offices in the interest of "narrowing disputed issues."

Stipulation & Order Concerning Other Proceedings [15-1] 2–4, Feb. 23, 2004. Of note, however, is the fact that the FBI only agreed to search for the records specified in the September 14, 1993, FOIA request.[9] *Id.* at 4. The law is clear on this issue: parties seeking FBI records must send FOIA requests to individual FBI field offices. 28 C.F.R. § 16.3(a). Since plaintiff failed to submit individual FOIA requests to various field offices for responsive documents, as is required by law, he cannot challenge the adequacy of the FBI's search.

### C. Plaintiff's Motion for Discovery

Plaintiff argues that based on the above arguments, a "disputed issue of material fact genuinely exists as to the adequacy of the search conducted by the FBI." Pl.'s Mot. at 17. Thus, plaintiff believes that the only way to resolve this issue is to conduct discovery regarding the disputed search issue pursuant to Rule 56(f). *Id.* In response, the FBI argues that this Court did not commit a "legal error" when it affirmed that the FBI's search was adequate. Def.'s Opp. at 2. Since this Court is denying plaintiff's motion to alter or amend its judgment pursuant to Rule 59(e), plaintiff's request for further discovery is similarly denied.

## V. CONCLUSION

For the aforementioned reasons, this Court will deny plaintiff's Motion to Reconsider its judgment pursuant to Rule 59(e). An appropriate Order accompanies this Memorandum Opinion.

Signed by Royce C. Lamberth, Chief Judge, on July 13, 2012.

---

[9] The Order expressly stated that both parties "have been unable to agree regarding plaintiff's demand that the FBI search non-ELSUR records in its field offices in the absence of any FOIA requests by plaintiffs addressed to those field offices." Stipulation & Order Concerning Other Proceedings at 4.